## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| DERMIRA, INC., EUGENE A. BAUER, DAVID E. COHEN, FRED CRAVES, MATTHEW FUST, HALLEY E. GILBERT, MARK MCDADE, JAKE NUNN, WILLIAM RINGO, KATHLEEN SEBELIUS, THOMAS G. WIGGANS, ELI LILLY AND COMPANY, and BALD EAGLE ACQUISITION CORPORATION, | ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on January 10, 2020 (the "Proposed Transaction"), pursuant to which Dermira, Inc. ("Dermira" or the "Company") will be acquired by Eli Lilly and Company ("Parent") and Bald Eagle Acquisition Corporation ("Merger Sub," and together with Parent, "Eli Lilly").

2. On January 10, 2020, Dermira's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Eli Lilly. Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to purchase all of Dermira's outstanding common

stock for $18.75 per share in cash.  The Tender Offer is set to expire on February 19, 2020.

3.      On January 22, 2020, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Dermira common stock.

9.      Defendant Dermira is a Delaware corporation and maintains its principal executive offices at 275 Middlefield Road, Suite 150, Menlo Park, California 94025.  Dermira's common

stock is traded on the NASDAQ Global Select Market under the ticker symbol "DERM."

10.    Defendant Eugene A. Bauer is Founder, Chief Medical Officer, and a director of the Company.

11.    Defendant David E. Cohen is a director of the Company.

12.    Defendant Fred Craves is a director of the Company.

13.    Defendant Matthew Fust is a director of the Company.

14.    Defendant Halley E. Gilbert is a director of the Company.

15.    Defendant Mark McDade is a director of the Company.

16.    Defendant Jake Nunn is a director of the Company.

17.    Defendant William Ringo is a director of the Company.

18.    Defendant Kathleen Sebelius is a director of the Company.

19.    Defendant Thomas G. Wiggans is Founder, Chief Executive Officer, and Chairman of the Board of the Company.

20.    The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.    Defendant Parent is an Indiana corporation and a party to the Merger Agreement.

22.    Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Dermira (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.    This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of January 8, 2020, there were approximately 54,695,165 shares of Dermira common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

30. Dermira is a biopharmaceutical company dedicated to bringing biotech ingenuity

to medical dermatology by delivering differentiated, new therapies to the millions of patients living with chronic skin conditions.

31.     The Company's approved treatment, QBREXZA® (glycopyrronium) cloth, is indicated for pediatric and adult patients with primary axillary hyperhidrosis.

32.     The Company is currently evaluating lebrikizumab in a Phase 3 clinical development program for the treatment of moderate-to-severe atopic dermatitis and also has early-stage research and development programs in other areas of dermatology.

33.     On January 10, 2020, Dermira's Board caused the Company to enter into the Merger Agreement with Eli Lilly.

34.     Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Dermira's outstanding common stock for $18.75 per share in cash.

35.     According to the press release announcing the Proposed Transaction:

 Eli Lilly and Company (NYSE: LLY) and Dermira, Inc. (NASDAQ: DERM) today announced a definitive agreement for Lilly to acquire Dermira for $18.75 per share, or approximately $1.1 billion, in an all-cash transaction. Dermira is a biopharmaceutical company dedicated to developing new therapies for chronic skin conditions. . . .

Under the terms of the agreement, Lilly will commence a tender offer to acquire all outstanding shares of Dermira, Inc. for a purchase price of $18.75 per share in cash, or approximately $1.1 billion. The transaction is not subject to any financing condition and is expected to close by the end of the first quarter of 2020, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Dermira's common stock. Following the successful closing of the tender offer, Lilly will acquire any shares of Dermira that are not tendered into the tender offer through a second-step merger at the tender offer price. . . .

For Lilly, Evercore is acting as the exclusive financial advisor and Weil, Gotshal & Manges LLP is acting as legal advisor in this transaction. For Dermira, Citi is acting as lead financial advisor, SVB Leerink is acting as financial advisor, and Fenwick & West LLP is acting as legal advisor.

36.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 5.02(a) of the Merger Agreement provides:

> The Company shall not, and the Company shall cause its Representatives not to, (i) directly or indirectly solicit, initiate or knowingly encourage or knowingly facilitate (including by way of providing information) any inquiries, proposals or offers, or the making of any submission or announcement of any inquiry, proposal or offer that constitutes or would reasonably be expected to lead to a Company Takeover Proposal or (ii) directly or indirectly engage in, enter into or participate in any discussions or negotiations with any Person regarding, furnish to any Person any information or afford access to the business, properties, assets, books or records of the Company to, or take any other action to assist or knowingly facilitate or knowingly encourage any effort by any Person, in each case in connection with or in response to any inquiry, offer or proposal that constitutes, or would reasonably be expected to lead to, any Company Takeover Proposal (other than, solely in response to an inquiry that did not result from a material breach of this Section 5.02(a), to refer the inquiring person to this Section 5.02 and to limit its communication exclusively to such referral or to clarify the terms thereof). The Company shall, and shall cause its directors and officers to, and shall use its reasonable best efforts to cause its Representatives to, immediately (i) cease all solicitations, discussions and negotiations regarding any inquiry, proposal or offer pending on the date of this Agreement that constitutes, or could reasonably be expected to lead to, a Company Takeover Proposal, (ii) request the prompt return or destruction of all confidential information previously furnished to any Person within the last six months for the purposes of evaluating a possible Company Takeover Proposal and (iii) terminate access to any physical or electronic data rooms relating to a possible Company Takeover Proposal. . . . The Company shall not, and shall cause its Representatives not to, release any Person from, or waive, amend or modify any provision of, or grant permission under or fail to enforce, any standstill provision in any agreement to which the Company is a party; provided that, if the Company Board determines in good faith, after consultation with its outside counsel that the failure to take such action would be inconsistent with its fiduciary duties under applicable Law, the Company may waive any such standstill provision solely to the extent necessary to permit the applicable Person (if such Person has not been solicited in breach of this Section 5.02) to make, on a confidential basis to the Company Board, a Company Takeover Proposal, conditioned upon such Person agreeing that the Company shall not be prohibited from providing any information to Parent (including regarding any such Company Takeover Proposal) in accordance with, and otherwise complying with, this Section 5.02.

37.     Additionally, the Company must promptly advise Eli Lilly of any proposals or inquiries received from other parties.  Section 5.02(d) of the Merger Agreement states:

> In addition to the requirements set forth in paragraphs (a) and (b) of this Section 5.02, the Company shall, as promptly as practicable and in any event within one business day after receipt thereof, advise Parent in writing of (i) any Company Takeover Proposal or any request for information or inquiry, proposal or offer that the Company Board in good faith believes could reasonably be expected to lead to a Company Takeover Proposal and (ii) the material terms and conditions of such Company Takeover Proposal or inquiry, proposal or offer (including any subsequent amendments or modifications thereto) and the identity of the Person making any such Company Takeover Proposal or inquiry, proposal or offer. Commencing upon the provision of any notice referred to in the previous sentence, the Company and its Representatives shall keep Parent informed on a reasonably prompt basis as to any material developments with respect to any such Company Takeover Proposal or inquiry, proposal or offer (and any subsequent amendments or modifications thereto).

38.     Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Eli Lilly a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.02(b) of the Merger Agreement provides:

> Neither the Company Board nor any committee thereof shall (i) (A) withdraw, qualify or modify in a manner adverse to Parent or Merger Sub, or propose publicly to withdraw, qualify or modify in a manner adverse to Parent or Merger Sub, the Company Board Recommendation or resolve or agree to take any such action, (B) adopt, endorse, approve or recommend, or propose publicly to adopt, endorse, approve or recommend, any Company Takeover Proposal or resolve or agree to take any such action, (C) publicly make any recommendation in connection with a tender offer or exchange offer (other than the Offer) other than a recommendation against such offer or (D) fail to include the Company Board Recommendation in the Schedule 14D-9 when disseminated to the Company's stockholders (any action described in this clause (i) being referred to herein as an "Adverse Recommendation Change") or (ii) approve or recommend, or propose publicly to approve or recommend, or authorize, cause or permit the Company to enter into any letter of intent, memorandum of understanding, agreement in principle, acquisition agreement, option agreement, merger agreement, joint venture agreement, partnership agreement or other agreement relating to or that would reasonably be expected to lead to, any Company Takeover Proposal (other than an Acceptable Confidentiality Agreement entered into in accordance with Section 5.02(a)), or resolve, agree or publicly propose to take any such action.

Notwithstanding anything to contrary in the foregoing or any other provision of this Agreement, (x) the Company Board may, in response to an Intervening Event, take any of the actions specified in clause (A) or (D) of the definition of Adverse Recommendation Change (an "Intervening Event Adverse Recommendation Change") if the Company Board determines, in good faith, after consultation with outside counsel, that the failure to take such action would be inconsistent with its fiduciary duties under applicable Law and (y) if the Company Board receives a Superior Company Proposal that did not result from a material breach of this Section 5.02, the Company may make an Adverse Recommendation Change, and may terminate this Agreement pursuant to Section 8.01(g) in order to enter into a definitive agreement with respect to the Superior Company Proposal in accordance with Section 8.04; provided that, prior to so making an Intervening Event Adverse Recommendation Change or an Adverse Recommendation Change, or so terminating this Agreement pursuant to Section 8.01(g), (1) the Company Board shall have given Parent at least four business days' prior written notice (a "Company Notice") of its intention to take such action and a description of the reasons for taking such action (which Company Notice, in respect of a Superior Company Proposal, shall specify the identity of the Person who made such Superior Company Proposal and the material terms and conditions of such Superior Company Proposal and attach the most current version of the relevant transaction agreement and which Company Notice, in respect of an Intervening Event, shall include a reasonably detailed description of the underlying facts giving rise to such action), (2) the Company shall have negotiated, and shall have caused its Representatives to negotiate, in good faith, with Parent during such notice period, to the extent Parent wishes to negotiate, to enable Parent to revise the terms of this Agreement in such a manner that would eliminate the need for taking such action (and in respect of a Superior Company Proposal, would cause such Superior Company Proposal to no longer constitute a Superior Company Proposal), (3) following the end of such notice period, the Company Board shall have considered in good faith any revisions to this Agreement irrevocably committed to in writing by Parent, and shall have determined in good faith, after consultation with outside counsel, that failure to effect such Adverse Recommendation Change or Intervening Event Adverse Recommendation Change would be inconsistent with its fiduciary duties under applicable Law and, with respect to a Superior Company Proposal, that such Superior Company Proposal continues to constitute a Superior Company Proposal and (4) in the event of any change to any of the financial terms (including the form and amount of consideration) of such Superior Company Proposal, the Company shall, in each case, deliver to Parent an additional Company Notice consistent with that described in clause (1) of this proviso and a renewed notice period under clause (1) of this proviso shall commence (except that the four-business-day notice period referred to in clause (1) of this proviso shall instead be equal to two business days) during which time the Company shall be required to comply with the requirements of this Section 5.02(b) anew with respect to such additional Company Notice, including clauses (1) through (4) of this proviso.

39.     The Merger Agreement also provides for a termination fee of $40 million payable by the Company to Eli Lilly if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

40.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

41.     As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

42.     First, the Solicitation Statement omits material information regarding the Company's financial projections.

43.     The Solicitation Statement fails to disclose: (i) all line items used to calculate (a) Adjusted Net Revenue, (b) Adjusted Cost of Sales, (c) Adjusted Total Operating Expenses, and (d) Changes in Net Working Capital and Other Adjustments; (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) the adjustments made "to reflect Dermira's management's estimate of the probability of success of lebrikizumab" and the underlying probability of success.

44.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

45.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Citi Group Global Markets Inc. ("Citi") and SVB Leerink LLC ("SVB").

46.     With respect to Citi's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the range of discount rates of 11.3% to 14.1%; (ii) the terminal values of the Company; (iii) Citi's basis for using a range of perpetuity growth rates of negative 30.00% to negative 20.00%; and (iv) the fully diluted shares outstanding of Dermira.

47.     With respect to SVB's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the range of discount rates of 11.0% to 13.0%; (ii) the terminal values of the Company; (iii) SVB's basis for using a range of perpetuity growth rates of negative 30.00% to negative 20.00%; and (iv) the fully diluted shares outstanding of Dermira.

48.     With respect to Citi's and SVB's analyses of premiums paid, the Solicitation Statement fails to disclose: (i) the transactions observed by the financial advisors in the analyses; and (ii) the premiums paid in the transactions.

49.     With respect to Citi's and SVB's analyses of price targets, the Solicitation Statement fails to disclose: (i) the price targets observed by the financial advisors in the analyses; and (ii) the sources thereof.

50.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51.     Third, the Solicitation Statement omits material information regarding potential conflicts of interest of Citi and SVB.

52.     The Solicitation Statement fails to disclose the amount of "additional fees" that Citi received "for other investment banking services [provided to Eli Lilly and its affiliates] unrelated

to the Transactions," as well as the timing and nature of such services.

53.    The Solicitation Statement fails to disclose the amount of compensation Citi received or will receive for providing services to Elanco Animal Health, Inc.

54.    The Solicitation Statement fails to disclose whether SVB has performed past services for Eli Lilly or its affiliates, as well as the timing and nature of such services and the amount of compensation received or to be received by SVB for providing such services.

55.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

56.    The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

57.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

58.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.    Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

60.    Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not

Case 1:20-cv-00132-MN   Document 1   Filed 01/27/20   Page 12 of 16 PageID #: 12

misleading.

61.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

62.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

63.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

64.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

65.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

66.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

67.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

68.     Plaintiff and the Class have no adequate remedy at law.

<u>COUNT II</u>

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

69.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70.     Section 14(d)(4) of the 1934 Act states:

12

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

71.    Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

72.    The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

73.    Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

74.    The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

75.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Eli Lilly)

76.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

77.     The Individual Defendants and Eli Lilly acted as controlling persons of Dermira within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as directors of Dermira and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

78.     Each of the Individual Defendants and Eli Lilly was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

79.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

80.     Eli Lilly also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

14

81.     By virtue of the foregoing, the Individual Defendants and Eli Lilly violated Section 20(a) of the 1934 Act.

82.     As set forth above, the Individual Defendants and Eli Lilly had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

83.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

84.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 27, 2020

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 1220
      Wilmington, DE 19801
      Telephone: (302) 295-5310
      Facsimile: (302) 654-7530
      Email: bdl@rl-legal.com
      Email: gms@rl-legal.com

      *Attorneys for Plaintiff*